Jonathan A. Dessaules, State Bar No. 019439
Jesse Vassallo Lopez, State Bar No. 033961
**DESSAULES LAW GROUP**
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Tel. 602.274.5400
Fax 602.274.5401
jdessaules@dessauleslaw.com
jvassallo@dessauleslaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| KeyBank National Association,<br><br>    Plaintiff,<br><br>vs.<br><br>Neumann Dermatology, LLC, f/k/a Sarah E. Neumann, LLC, Sarah E. Neumann, individually and as trustee of the Sarah Neumann Revocable Trust U/A April 5, 2011,<br><br>    Defendants. | No.<br><br>**COMPLAINT** |

COMES NOW Plaintiff KeyBank National Association, by and through its attorneys, and complains and alleges as follows:

**INTRODUCTION**

1. This is a fraud action for, among other things, alter ego and fraudulent transfer against Neumann Dermatology, LLC, f/k/a Sarah E. Neumann, LLC, the Sarah Neumann Revocable Trust U/A April 5, 2011 and Sarah E. Neumann by reason of Sarah E. Neumann's plundering of two businesses, (1) Hawaii Skin Care Center and (2) Neumann Dermatology, LLC, and thereby rendering them insolvent and undercapitalized.

**THE PARTIES**

2. Plaintiff KeyBank National Association ("KeyBank") is a national association whose charter lists a main office of 127 Public Square, Cleveland, Ohio, which is also KeyBank's

principal place of business.

3. Defendant Neumann Dermatology, LLC f/k/a Sarah E. Neumann, LLC ("ND") is an Arizona limited liability company whose sole member and manager is the Sarah Neumann Revocable Trust U/A April 5, 2011 ("SN Trust").

4. Defendant Sarah E. Neumann ("S. Neumann") is a citizen of the State of Arizona. Upon information and belief, she is, and at all relevant times was, the manager and settlor, trustee, and beneficiary of the SN Trust. The last known administrative address of S. Neumann as manager of SN Trust and statutory agent of ND is 4545 E. Chandler Boulevard, Suite 305, Phoenix, Arizona 85048.

## VENUE AND JURISDICTION

5. The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between KeyBank and Defendants ND, S. Neumann, and SN Trust, and the amount in controversy exceeds $75,000.00.

6. This Court has personal jurisdiction over Defendants ND, S. Neumann, and SN Trust because these entities and individual reside or have their principal place of business in Arizona.

7. Venue is proper in this Court because Defendants ND, S. Neumann, and SN Trust reside in the District of Arizona.

## FACTUAL BACKGROUND

*Judgment against Neumann Dermatology, LLC*

8. On July 29, 2014, KeyBank entered into a Master Lease Agreement ("Lease") with Hawaii Skin Cancer Center, LLC ("HSCC").

9. On July 29, 2014, ND executed a Continuing Guaranty ("Guaranty"), in which it absolutely and unconditionally agreed to guarantee the repayment of HSCC's debts to KeyBank, up to 49.5%.

10. On April 25, 2016, HSCC stopped making the required monthly payments and defaulted on the Lease.

11. KeyBank subsequently filed a complaint for recovery of the outstanding amount due on the Lease in the Supreme Court of the State of New York, and on December 4, 2018, the court issued a judgment in the amount of $243,678.93 ("Judgment").

12. Pursuant to the Lease, ND owed KeyBank 49.5% of the Judgment amount, or approximately $120,621.07.

***Alter Ego: ND, SN Trust and Sarah E. Neumann***

13. S. Neumann is the statutory agent of ND.

14. S. Neumann was the original manager, and upon information and belief the sole member, of ND beginning on June 14, 2007 until August 12, 2011.

15. SN Trust became the current manager, and upon information and belief the current sole member, of ND on or about August 12, 2011, pursuant to the Articles of Amendment to Articles of Organization of Sarah E. Neumann, LLC (later known as ND) ("2011 Articles of Amendment"). In the 2011 Articles of Amendment.

16. S. Neumann is the manager and trustee, and upon information and belief the settlor and sole beneficiary, of the SN Trust, which is a revocable trust.

17. Upon information and belief, S. Neumann, as the manager of the SN Trust, is the acting manager of ND.

18. While SN Trust has been the sole member of ND since 2011, in ND's filed federal taxes from 2015 through 2018, ND instead identified S. Neumann as the sole "shareholder" for distributions, disregarding SN Trust as the proper legal entity entitled to distributions.

19. In 2015, 2016 and 2018, distributions to S. Neumann exceeded the net income of ND, rendering ND insolvent. Moreover, from 2017, ND was not only insolvent, but also undercapitalized, ending its years in 2017 and 2018 with negative balances.

3

20. ND started transferring significant amounts of its funds to S. Neumann through its distributions starting in 2015, when upon information and belief, HSCC started to exhibit difficulty in making its payments to its creditors and just before HSCC stopped making payments, such that ND has become undercapitalized for payment of the Guaranty.

21. There exists, and at all times herein mentioned there existed, a unity of interest and ownership between S. Neumann, SN Trust, and ND, whereby S. Neumann treats the business entities that she controls as her own personal piggy banks. On information and belief, SN Trust and ND (the "Controlled Entities") are and have been at all relevant times completely controlled, dominated, managed, and operated by S. Neumann as her individual business and alter ego, and for her own personal benefit, such that any individuality and separateness between S. Neumann and the Controlled Entities have ceased, and the Controlled Entities are the alter ego of S. Neumann, because, among other things:

(a) The Controlled Entities were or are mere shells, instrumentalities, shams, and conduits without adequate capital, assets, units or unit holders or were so inadequately capitalized that, compared with the business to be done by the Controlled Entities and the risks of loss, their capitalization was illusory;

(b) The Controlled Entities' assets were withdrawn by S. Neumann to render them insolvent;

(c) The Controlled Entities were or are conceived, intended, and used by S. Neumann as a device to avoid individual liability;

(d) The Controlled Entities intermingled their assets with S. Neumann in order to evade payment of obligations owed to creditors, including KeyBank;

(e) The corporate formalities of the Controlled Entities have been disregarded and the Controlled Entities, and their assets, have been used by S. Neumann as her own personal piggy bank;

(f) Plaintiff is informed and believes, and thereon alleges, that the operations, businesses and activities of the Controlled Entities were and are owned, directed, controlled, entirely influenced and used as mere instrumentalities by S. Neumann;

(g) There is virtually identical management, control and beneficial ownership of the Controlled Entities;

(h) Plaintiff is informed and believes, and thereon alleges, that the operations and business of the Controlled Entities were and are directed by S. Neumann; that the Controlled Entities were and are shell entities controlled, dominated, entirely influenced and used by S. Neumann for the conduct of her business solely as a device to avoid liability; that, at various times relevant herein, the Controlled Entities were and are undercapitalized; that the Controlled Entities do not operate separately from S. Neumann; that the separateness of the Controlled Entities and S. Neumann has ceased to exist and/or has never existed; and that S. Neumann has not sufficiently observed or followed the requisite formalities with respect to the Controlled Entities.

22. The Controlled Entities are merely the alter ego of S. Neumann, and it would work a fraud and injustice upon KeyBank if the separate existence of the Controlled Entities were recognized.

23. By virtue of the allegations above, Defendants, and each of them, are liable to KeyBank for the damages, debts and obligations of the Controlled Entities. Accordingly, the company and trust shells of the Defendants, including the Controlled Entities, and each of them, should be ignored, and the Defendants should be held to be directly liable and obligated to KeyBank, jointly and severally, for the damages, debts and obligations owed to KeyBank, as alleged herein.

24. Adhering to the fiction of the separate existence of the Controlled Entities as separate entities distinct from S. Neumann would permit abuse of the company and trust privilege and would sanction a fraud in that S. Neumann caused significant sums in a specific amount to be proven at trial to be withdrawn from the funds of the Controlled Entities to be distributed to

herself, all for the purpose of avoiding and preventing attachment and execution by creditors, including KeyBank, thereby rendering the Controlled Entities unable to meet their obligations to KeyBank.

25. At all times relevant herein, KeyBank is informed and believes, and thereon alleges, that S. Neumann, directly or indirectly benefits from, operates, manages, directs and/or controls the businesses and other activities of the Controlled Entities and that there is such a unity of interest and ownership between and among the Defendants, they have a unity of interest and ownership, such that their separateness has ceased to exist and/or has never existed. In this regard, each Defendant merely serves as the alter ego of each other Defendant, such that it would work a fraud and injustice upon KeyBank if their separate existence is to be recognized.

***Civil Conspiracy***.

26. KeyBank alleges on information and belief that Defendants conspired and agreed among some or all of the other Defendants to commit the wrongful acts alleged in this Complaint.

27. KeyBank alleges on information and belief that Defendants agreed to commit such wrongful acts with the intent and purpose of advancing their gain at the expense of their creditors, including KeyBank.

28. KeyBank alleges on information and belief that Defendants committed the wrongful acts alleged in this Complaint pursuant to, and to further, the conspiracy and the agreement alleged above.

29. KeyBank alleges on information and belief that Defendants furthered the conspiracy alleged in this Complaint by cooperating with each other, or lent aid and encouragement to each other, or ratified and adopted the acts alleged in this Complaint of each other. Each of the Defendants, therefore, is liable for all the acts, omissions or breaches of the other, all of which were done to further the conspiracy and for the benefit of any or all of the other co-conspirator Defendants.

30. KeyBank alleges on information and belief that Defendants have continued to the present date to commit overt acts to further the conspiracy alleged in this Complaint.

31. As a consequence of Defendants wrongful acts, Defendants have attempted to withhold the money owed to their creditors, including the $120,621.07 owed to KeyBank from the Judgment against ND.

***Fraudulent Transfer***.

32. Starting in 2015, S. Neumann caused ND to distribute more than its net income to S. Neumann each year when the net income was positive, rendering ND insolvent.

33. Upon information and belief, these distributions were made with the actual intent to hinder, delay or defraud the creditors of ND, including KeyBank, because, among other things:

(a) The transfers from ND to S. Neumann through SN Trust was to an insider;

(b) S. Neumann, as the alter ego of ND and SN Trust, and as the individual with sole control over the Controlled Entities, effectively retained possession of the transferred money;

(c) The transfers were of substantially all of ND's liquid assets, rendering ND insolvent;

(d) S. Neumann, as manager of ND, removed and concealed the assets of ND; and

(e) S. Neumann caused ND to become insolvent shortly after causing the transfers to be made.

34. Without receiving a reasonably equivalent value in exchange for the distributions, S. Neumann, as manager of ND, upon information and belief intended to incur, or believed or reasonably should have believed that ND would incur debts beyond its ability to pay as they became due.

## COUNT 1

**(Declaratory Judgment that S. Neumann, SN Trust, and ND are alter egos of each other)**

35. KeyBank realleges and incorporates by reference each and every allegation

contained in paragraphs 1 through 34, above, as though such allegations were set forth in full herein.

36. There exists a unity of control between S. Neumann, SN Trust, and ND, as evidenced by:

    a. The undercapitalization of ND;

    b. The insolvency of ND as a result of S. Neumann's actions to plunder the cash of ND and take such cash for her own personal use;

    c. S. Neumann managing and controlling SN Trust as trustee and ND as manager of SN Trust;

    d. S. Neumann having, upon information and belief, sole beneficial ownership of SN Trust and ND;

    e. The disregard of corporate formalities; and

    f. Upon information and belief, the intermingling of funds in order to withhold same from the creditors of ND.

37. Observance of the trust and limited liability company form for the SN Trust and ND, respectively, would sanction a fraud and injustice upon KeyBank by allowing S. Neumann to hide or otherwise withhold the money owed pursuant to the Judgment.

## COUNT 2

**(Fraudulent Transfer of ND Assets Against All Defendants)**

38. KeyBank realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 37, above, as though such allegations were set forth in full herein.

39. Starting in 2015, S. Neumann caused ND to transfer its assets to S. Neumann through the SN Trust such that it had insufficient capital to meet its obligation to pay the Guaranty, rendering ND insolvent.

40. ND started making transferring its assets with the intent to hinder, delay or defraud its creditors, including KeyBank, as supported by the following:

    a. The transfer of funds from ND to S. Neumann was to an insider;

    b. S. Neumann, as the alter ego of ND and SN Trust, or alternatively, as the individual with sole control over the ND and SN Trust, effectively retained possession of the transferred money while preventing creditors from accessing same due to the limitation of liability from SN Trust and ND;

    c. The transfers of funds from ND to S. Neumann were substantially all of ND's liquid assets, rendering ND insolvent;

    d. S. Neumann, as manager of ND through SN Trust, removed and concealed the assets of ND from its creditors; and

    e. S. Neumann caused ND to become insolvent shortly after causing the transfers to be made.

41. ND did not receive a reasonably equivalent value for the distributions made to S. Neumann through SN Trust.

42. S. Neumann, as manager of SN Trust and acting manager of ND, knew or reasonably should have known that HSCC would not be able to make its payments under the Lease, and ND, as a guarantor of the Lease, would incur debts beyond its ability to pay as they became due.

43. As a result of its reliance, KeyBank, as the creditor, has suffered damages in the amount of the Judgment owed under the Guaranty, plus any additional interest and costs to be determined at trial.

## COUNT 3

**(Tortious Interference with Contractual Relations against S. Neumann and SN Trust)**

44. KeyBank realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 48, above, as though such allegations were set forth in full

9

herein.

45. A valid contractual relationship existed between KeyBank and ND in the form of the Guaranty.

46. S. Neumann, and SN Trust as managed by S. Neumann, knew of the existence of the Guaranty as evidenced by S. Neumann signing the Guaranty.

47. S. Neumann, individually and as manager and trustee of SN Trust, intentionally interfered in causing the breach of the Guaranty by withdrawing such funds that ND is incapable of meeting its obligations as expected under the Guaranty.

48. The interference in the Guaranty by S. Neumann, individually and as manager and trustee of SN Trust, by undercapitalizing ND was improper because it was done in an attempt to evade payment of ND's obligations owed to KeyBank under the Guaranty.

49. As a result of S. Neumann, individually and as manager of SN Trust, disrupting KeyBank's expectation of repayment under the Guaranty, KeyBank has suffered damages in the amount of the Judgment owed under the Guaranty, plus any additional interest and costs to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff KeyBank National Association requests the Court grant judgment in its favor as follows:

**On Count 1**

50. For an order showing that Defendants and each of them are the alter egos of each other, and consequently, that each and every one of the Defendants is jointly and severally liable to KeyBank for the Judgment and all claims alleged against Defendants.

**On Count 2**

51. For an order against all Defendants, jointly and severally, for 49.5% of the Judgment, plus accruing interest and costs.

**On Count 3**

52.     For an order against S. Neumann and SN Trust, jointly and severally, for 49.5% of the Judgment, plus accruing interest and costs, and punitive damages to be determined by this Court.

DATED this 25th day of January 2021.

                          DESSAULES LAW GROUP

                          By:   /s/ Jonathan A. Dessaules
                                Jonathan A. Dessaules
                                Jesse Vassallo López
                                *Attorneys for Plaintiff*